UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS

MARY SEGUIN.

*pro se*

*Plaintiff.*

VS.

Civil Action No. 4:23-cv-04562

*United States Courts*
*Southern District of Texas*
*F I L E D*

MAY 2 1 2024

*Nathan Ochsner, Clerk of Court*

TYLER TECHNOLOGIES. INC.; GERO MEYERSIEK; BARBARA GRADY;
RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity: MICHAEL
D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities;
RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN
TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA
CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD,
PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and
official capacities; RHODE ISLAND JUDICIARY in its official capacity; PAUL A. SUTTELL
in his individual and official capacity as EXECUTIVE HEAD OF RHODE ISLAND
JUDICIARY; RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS in its
official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR
COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in its official capacity;
RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE ISLAND SUPERIOR
COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL TECHNOLOGY
CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN JOSEPH
BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE ISLAND
OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND OFFICE
OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official capacity;
ADAM D. ROACH, PETER NERONHA in their official and individual capacities;
*Defendants*

### PLAINTIFF'S MOTION TO SET A HEARING ON PLAINTIFF'S Fed. R. Evid. 201(e) REQUEST FOR JUDICIAL NOTICE

The Plaintiff, MARY SEGUIN, respectfully moves this Court to set a hearing on

Plaintiff's Fed. R. Evid. 201(e) Request for Judicial Notice, at 9:00 A.M. on August 31, 2024.

Additionally. Plaintiff invokes 18 U.S.C. § 4 and 18 U.S.C. § 666.

In support of Plaintiff's motion to set a hearing on Plaintiff's Fed. R. Evid. 201(e) request for judicial notice, Plaintiff states the following:

1.      The use of judicial notice spans a wide spectrum of cases, from the most historically significant-such as Chief Justice Earl Warren's reliance in *Brown v. Board of Ed.*, 347 U.S. 483, 494 n.11 [1954], on scholarly publications documenting the effect of segregated schools on minority children-to the most mundane, such as the 2d U.S. Circuit Court of Appeals' judicial notice of the "traditional features of a snowman." *Eden Toys Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 n.1 [2d Cir. 1982].

2.      This case arises out of monetary claims for sweeping forensic misconduct and structural bias by the Defendants involved in their corrupt administration of an Act of Congress, namely Part D of Title IV of the Social Security Act, implemented in response to 1996 Amendments.

3.      At issue are both the "mechanisms or pathology or systemic pervasion" of forensic misconduct and structural bias by the Defendants, as well as the sweeping extent of forensic misconduct that infect persons targeting persons in the jurisdiction of Texas through the legal framework of Part D of Title IV of the Social Security Act, including applicable officers of the court in the Rhode Island jurisdiction, who appear to agree to, and/or participate in defrauding support obligors AND the United States, namely the federal state cooperative Title IV-D program, by feloniously concealing the sweeping forensic misconduct and structural defect evidence of Rhode Island's unlawful 12% compound interest disallowed by 42 U.S.C. § 654(21)(A), and *how* the scheme corruptly operates.

4.      In 1996, Congress amended Part D of Title IV of the Social Security Act, and prescribed substantial penalties on participating states that fail to comply with all provisions of

Part D.  *See* 42 U.S.C.  § 655(a)(4) and  § 655(a)(5) that provides up to tens of millions of dollars of penalties annually for noncompliance.

5.     Critically, in the 1996 Amendments, Congress mandated the automation of intrastate and interstate support collection efforts, requiring participating states to implement a state computer "automated data processing and retrieval system" that must meet *__all__* requirements of Part D, and that also serves as the computer-calculated government records to retrieve for basis of auditing for compliance as well as to calculate eligible federal incentive payments paid to participating states, *see*. E.g., 42 U.S.C.  § 655, 658 *et al.* Moreover, Congress funds 90% of the cost of the computer system implementation.  Furthermore, Congress pays 66% of the cost of operations (see 42 U.S.C.  § 655(a)(1)-(3)).  Equally critical, Congress tied participating states' compliance to Part D to eligibility for TANF federal funding (TANF is a block grant program established in 1996 as the successor to the AFDC program. *See* 42 U.S.C. §§ 601-618). Without an approved state plan, a State may lose federal funding under both Title IV-D (child support enforcement) and Title IV-A (TANF). *See* 42 U.S.C. § 655(a)(1)(A); 42 U.S.C. § 602(a)(2). Alternatively, a State may opt for an alternative penalty in lieu of disapproval of their state plan and the withholding of federal funds if the State is making a good faith effort to comply with the program's requirements and the State has submitted a corrective compliance plan. *See* 42 U.S.C. § 655(a)(4).  The 1996 Amendments critically made clear that Part D preempts state laws and state constitutions of participating states and provided participating states the grace period up to October 2000 to implement the 1996 Amendments.  Congress, under the Commerce Clause, may offer the States a choice of regulation under federal control or preemption under federal regulation. See *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 288 (1981).

6.     Therefore, faced with the 1996 Amendment's new mandatory shift away from traditional court-cased or state-revenue based collection of support to a computer-based state registry and federal registry cooperative scheme, Rhode Island and other similarly situated participating states within the Title IV-D legal framework is required to change its pre-existing 12% compound interest state law to comply with 42 U.S.C. § 654(21)(A) that allows states to only charge 3-6% simple interest, only if they choose to charge interest (many states opt not to charge interest).  Under Part D, in welfare cases, the entire ordered amount is paid by the TANF program, and the welfare recipient assigns the entire ordered amount to the State that then represents debt to the state (see 42 U.S.C. § 654(5)) – compared to the 3-6% simple interest allowed by 42 U.S.C. § 654(21)(A), Rhode Island's 12% compound interest represents a lucrative source of unlawful revenue under color of state law, exemplifying usurious greed, and in order to clandestinely continue the scheme, the Rhode Island Defendants corruptly implemented their state computer system with the specific feature allowing for manipulation of the interest field (to zero out interest in interstate cases) and run several reports of false and manipulated computer Title IV government records calculated to defraud the United States (by concealing from the United States the Rhode Island Defendant persons are not only noncompliant, but also hide the substantial hundreds of millions of penalties incurred that had accrued since 1988 for its willful noncompliance of Part D of Title IV, and all other associated criminal penalties and fines, *inter alia*, for criminally falsifying government records and making false claims to the United States, as well as the TANF funding for which they are not eligible, and the 66% annual federal funding since 1988 for the concealed corrupt operation), and the corollary defraud of support obligor victims.

7.     The corrupt administration of the Act of Congress involves the following: Rhode Island conceals its unlawful 12% compound interest by removing the underlying support order's ordered interest from the Title IV-D federally funded computer that Rhode Island installed. Specifically, the Defendants zero out the interest field by placing an "N" in the interest field. The Defendants then transmit the falsified computer government record in interstate cases to the Recipient State (like Texas) through the federal Central Registry, falsely certifying annually to the Recipient State there is no interest (see 45 CFR 303.7(c)), in Plaintiff's case for the years 2018, 2019, 2020, 2021, 2022, 2023 and 2024, and on-going.  Critically, Rhode Island persons' transmission of falsified computer records to the federal Central Registry under 45 CFR 303.7(c) damages and destroys the integrity and accuracy of the federal Central Registry, whose accuracy and information integrity interstate and intergovernmental authorities must rely on, as well as support obligors.  The support-obligor's online account would then show "$0.00" under the interest field.  Rhode Island Defendants then lie to the support obligor that the $0.00 means interest was waived if the support obligor agrees to pay the demanded payment amount or arrangement.  Once the support-obligor agrees and executes on the agreement to pay off support, the Rhode Island Defendants again manipulate the computer records and put the unlawful and previously concealed 12% compound interest back on the computer system, then clandestinely place fraudulent liens on support obligor's properties for the illegal 12% compound interest. When support obligors contest the fraudulent liens and demand legal justification, the Defendants criminally deny support obligors access to their case files information in order to cover up record evidence of the Defendant persons' felonious tampering, manipulation and falsification of computer Title IV-D government records, that they fear would also expose them to the egregious false claims the Defendant persons routinely made to the United States for

federal funding under the Title IV program.  The Defendants' corrupt administration of an Act of

Congress is calculated to make false claims and defraud the United States of the hundreds of

millions of dollars in penalties that the Rhode Island incurred and has accrued under Part D of

Title IV that is owed to and payable to the United States, the billions of dollars of federal funding

comprised of the 66% funding of their illegal instate operation, billions of dollars of TANF

funding for which they are not eligible since 1988 that is owed to and payable to the United

States, and the corollary billions of dollars of fines per violation under all applicable federal and

recipient states' criminal codes that are owed to and payable to the United States and applicable

recipient states – as well as the corollary false claim defraud of support obligor victims, such as

the Texas Plaintiff. (Also see defendants' penalty-incurring violation of 42 U.S.C.  §  654b(b)(4)

for each Defendant denial of access to Plaintiff's Title IV-D records that incurs a penalty under

42 U.S.C.  §  655(a)(5) for each information access denial in violation of 42 U.S.C. 654(27)(A)).

8.      Moreover, in addition to manipulating the computer records, the Defendants

routinely run different reports prescribed by a written state policy that all defendants agreed to

and are trained on and train others on, for each manipulated false record.  Defendants' scheme to

make false claims to the United States for federal funds and to criminally conceal the substantial

accrued penalties and owing to the United States for violating Part D of Title IV of the Social

Security Act, involves running several false reports and certifications contain false information

retrieved from the tampered, falsified and deliberate transmission of false computer Government

records submitted for the purpose of defrauding the United States, the Receiving State (such as

Texas) and the interstate support obligor (such as the Texas Plaintiff-Appellant) under 42 U.S.C.

§§ 651-669, Part D of Title IV of the Social Security Act legal frame work.  As of December 5,

2023 the time of the filing of the Complaint (ECF 1) that factually alleges the unlawful 12%

compound interest being concealed, Plaintiff identified several pages of documents that splashed as a warning reminder the state policy stating, "It is undesirable…to charge interest in interstate cases," yet all the State Defendants produced was ONE single computer report of accounting that failed to show the "$0" interest displayed on the computer online account in Plaintiff's online support account on December 6, 2021 – see paragraph 95, pg. 44 of Complaint and see screenshot of the online account in **Exhibit II**, which Plaintiff requests judicial notice under Fed. R. Evid. 201(c); Plaintiff therefore realized, as is consistent with the pattern of Defendants' record denial alleged in the Complaint, that the Defendants unlawfully withheld and criminally concealed material and vital information of criminal forensic misconduct and structural bias, including information directly showing government record (computer) tampering and falsification, and whether by policy multiple (computer) reports are generated or run showing different manipulated figures for the same account, and how interstate case records are manipulated based on the bannered state policy "undesirable…. to charge interest in interstate cases."

9.      Plaintiff continued her search for the concealed withheld evidence.  A withheld evidence was available in 2024, that Plaintiff-Appellant attaches hereto under **Exhibit I**, and requests judicial notice under Fed. R. Evid. 201(c), and had duly notified the Government pursuant to 18 U.S.C. § 4 in mid-March 2024, since the coordinated acts are felonies under federal law.  Moreover, Plaintiff attaches in **Exhibit III** the Title IV TRAC records obtained of Plaintiff's case file that documents the defendant "removed the interest from the system" when it was sent to Texas in 2018.  See 42 U.S.C.  §  666(14) and 45 CFR 303.7(c), as per routine state policy prescribing for the zeroing out of interest in interstate cases from the computer system shown in the state policy attached in Exhibit I, for the purpose of concealing the unlawful 12%

compound interest.  Under federal law 42 U.S.C. § 666(14), Rhode Island must certify to the recipient state, Texas, any underlying interest, annually, under 45 CFR 303.7(c).  Rhode Island deliberately violated the law falsely certifying there is no underlying 12% compound interest in order to conceal/cover up the unlawful 12% compound interest, its criminal state policy to routinely zero out the interest in the computer system in interstate cases in order to cover up the unlawful interest, and the criminal transmission of falsified computer records to the federal Central Registry (thereby destroying the integrity of the Central Registry) for the purpose of making false claims to the United States claiming eligibility for federal Title IV-D funding by covering up evidence of Rhode Island's felonious record tampering and falsification of government records calculated to conceal the illegal 12% compound interest.  Defendants, upon being served with the Summons in this action, fail to appear before this federal Court in Texas, for fear of being arrested for multiple federal felonies.  This case is in regards to the organized fraud, theft of public money and government programs involving billions of dollars by the 42 U.S.C. § 654 regulated political subdivision persons and partner private persons named in the action, through the obstruction of justice felonious and corrupt interstate collection of unlawful 12% compound interest that involved the felonious tampering of the state (federally funded) and federal Title IV-D automated data processing system (computer) and felonious false certifications to TEXAS (computer and mail) and the United States (computer and mail) by State Policy, defrauding and fraudulently placing fraudulent liens on Plaintiff's Texas properties harming and victimizing the Plaintiff within the Title IV-D Legal Framework Involving Felonious Acts by the Defendants and Misprision of Felony by Defendants.  To maximize the defendants' 12% compound interest scheme, the defendants moreover violate by policy 42

U.S.C. §666(a)(9)(C), by routinely retroactively modifying orders to establish the unlawful 12% compound interest retroactively.

10.    The defendants' 12% compound interest scheme is in part motivated by the fact that the defendants-sponsored policy is surreptitiously aimed at unlawfully generating 12% compound interest debt owed to the State under the Title IV-D legal framework in welfare cases. Because the entire support and "interest" order is assigned to the State in welfare cases, that then becomes a debt owed to the State by noncustodial parents under the provisions of 42 U.S.C. § §651-669, the 12% compound "interest" charged on its face represents unlawful state revenue under color of state law.  To enhance and maximize the operations, defendants enshrined the routine practice into an adopted policy and procedures adopted by all defendants, hereafter known as "policy."  Plaintiffs attach herewith the aforesaid policy in Exhibit A.  All defendants found the policy framework just as useful in non-welfare cases to generate unlawful 12% compound interest income through the agent-principal arrangement by agreement.

11.    Because noncompliance with provisions of 42 U.S.C. § 654(1)-(34) incurs penalties of tens of millions of dollars in a fiscal year under 42 U.S.C. §651-669, and can cause the noncompliant entities to lose TANF funding, the defendants-sponsored policy aims to conceal the Rhode Island defendants' noncompliant 12% compound interest by manually removing the interest amount from the automated data processing system, thus creating false accounting, false statements, false certifications that destroys the information integrity of the Central Registry regulated by 45 CFR 303.20 and 45 CFR 303.7, that is calculated to conceal the defendants' noncompliance with all provisions of 42 U.S.C. § 654 which in turn renders the defendants ineligible for federal funding under the Title IV-D Program, which can cause the State to lose TANF funding.  See, *Hodges v. Shalala,* 121 F.Supp.2d 854 (D.S.C. 2000), *Hodges*

*v. Shalala,* 121 F. Supp. 2d 854 (D.S.C. 2000), aff'd, 311 F.3d 316 (4th Cir. 2002), cert. denied,

540 U.S. 811 (2003) As a condition of receipt of any federal funding under Title IV-D of the

Social Security Act, 42 U.S.C. §§ 651-669, States must have an approved state plan for child and

spousal support that meets all the requirements of 42 U.S.C. § 654. Congress, under the

Commerce Clause, may offer the States a choice of regulation under federal control or

preemption under federal regulation. See *Hodel v. Virginia Surface Mining & Reclamation Assn.,*

*Inc.,* 452 U.S. 264, 288 (1981).

      12.      Defendants violated 42 U.S.C. §  654(21)(A), 42 U.S.C. §  666(14), 42 U.S.C. §

654a and 654b, 45 CFR 303.7(b) and (c), and created routine fraudulent records and

certifications on the intergovernmental and interstate federal Central Registry, by defendants-

sponsored Policy, for 7 years, starting in October 2018, then 2019, 2020, 2021, 2022, 2023 and

2024, on behalf of non-welfare defendant Gero Meyersiek who was fully informed and had fully

approved and affirmatively directed the State Defendant agency's system tampering on his

behalf.  See Exhibit II Title IV-D TRAC records.  After Texas Plaintiff performed on the

contract-agreed upon pay-off lump sum of $104,185.98, Defendants again feloniously

manipulated the Title IV computer system to falsely record $0.00 under December 2021 for

Plaintiff's very large December 7, 2021 lump sum payment of $104,185.98, with the clear

corrupt intent of defrauding the Plaintiff yet again by claiming she never paid the amount.

Plaintiff attaches the screenshot evidence of the falsified computer record as **__Exhibit IV__** and

respectfully requests judicial notice under Fed. R. Evid 201(c) and requests a hearing under Fed.

R. Evid. 201(e).   Upon information, Defendants' violations and false claims date back to 1975 to

the present is on-going.

13.     Since the 1996 Amendments of Title IV-D of the Social Security Act, Congress prescribed penalties on a sliding scale for States' noncompliance with 42 U.S.C. § 654 for each fiscal year that is accruable.  See, *Hodges v. Shalala*, 121 F.Supp.2d 854 (D.S.C. 2000), *Hodges v. Shalala*, 121 F. Supp. 2d 854 (D.S.C. 2000), aff'd, 311 F.3d 316 (4th Cir. 2002), cert. denied, 540 U.S. 811 (2003).

14.     Congress prescribed under 42 U.S.C. § 654(1) that participants in the Title IV-D Program must have all provisions of 42 U.S.C. §654 in effect in all political subdivisions of the State.

15.     Moreover, in the 1996 Amendments, Congress conditioned participation on the acceptance of the preemption of 42 U.S.C. §654, providing up to two year grace period for participating states to amend the state constitutions and corresponding state general laws in order to comply with the 1996 Amendments to Title IV-D of the Social Security Act.

16.     Under the 1996 Amendments to 42 U.S.C. §654, noncompliant entities or persons incur penalties for failing to implement an automated data processing and information retrieval system and/or violating regulatory requirements under 42 U.S.C. §654, 45 CFR 303.20 and 45 CFR 307.7, and other requirements established by the United States Department of Health and Human Services ("HHS").  In the 1996 Act, Congress determined that any State that failed to automate its child-support program which meets all requirements of this part enacted on or before August 22, 1996 (see 42 U.S.C. 654(24), 42 U.S.C. 654a and 42 U.S.C. 654(27)) should incur substantial penalties. 42 U.S.C. §655(a)(4) and 42 U.S.C. §655(a)(5).  Congress's 1996 substantial penalty provision for noncompliance with all requirements of Part D that must be met by the mandatory implemented automated data processing (computer) system prompted the defendants to agree to a criminal scheme to tamper with and falsify accounts with the unlawful

12% compound interest in interstate cases that are sent to the federal Central Registry.  The

state's intrastate state registry is fully within the control of the defendants and therefore, the

defendants tamper with the records retrieved from the intrastate state registry system and falsify

certificates of compliance sent to the United States Title IV-D Funding program administrators.

Due to the fact that interstate cases involve federal and other state registries, defendants tamper

with the Title IV-D automated data processing system by feloniously zeroing out the whole

interest, essentially remove the interest from the system, fraudulently certifying interstate to the

receiving State and to the federal central registry that there is no interest, with the corrupt intent

to fraudulently collect the unlawful 12% compound interest under color of state law through

mechanisms circumventing the Federal Central Registry regulations.

17.    The State Policy attached to Exhibit I makes it glaringly obvious that the

Defendants deliberately implemented the Rhode Island computer with the explicit feature to

manipulate and tamper with the interest data field for the purpose of removing and concealing

the unlawful 12% compound interest and to run multiple reports for the varied manipulated

computer data – to wit, for example, the specific instructions to input "N" to "zero out" interest.

Then, the state policy attached to Exhibit I explicitly prescribes running multiple reports after

zeroing out the interest on the Title IV computer system, making it clear each report is a falsified

record submitted for the purpose of making false claims. The issue of self-dealing, partiality and

conflict of interest of state attorneys prosecuting the support who affirmatively caused the

multiple manipulation of the computer data and the self-dealing partiality of officers of the court

in the jurisdiction of Rhode Island that participate in the sweeping false claims, and the corollary

acts encompassing obstruction of justice and fraud on the court are at the heart of this case.

18.     Defendants manipulate the computer records by manually inputting the unlawful 12% compound interest back on the system to make false claim to defraud support obligors of the unlawful 12% compound interest.  Then, Defendants manipulate the computer records to generate a false report falsely showing there is no unlawful 12% compound interest and that Defendants are Title IV-D compliant in order to make false claims to the United States for Title IV federal funds, including TANF funding and incentive payments under 42 U.S.C. § 655, and in order to conceal the substantial penalties accrued and owing to the United States since 1988 (and all other applicable penalties on the criminal conduct), and to make false claims for federal 66% reimbursement for the operation of the Defendants' coordinated criminal enterprise defrauding the United States and defrauding support obligors using the Title IV-D legal framework.

19.     The defendants violated, among others, the following federal criminal and civil laws: Title IV-D 42 USC 651-669, 31 U.S.C. § 3279, 18 U.S.C. §2, 18 U.S.C. §3, 18 U.S.C. §4, 18 U.S.C. §13, 18 U.S.C. §21, 18 U.S.C. §35, 18 U.S.C. §88 ("§ 88. "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both.", 18 U.S.C. § 241. "Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or officer acting as such commissioner, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or officer acting as such commissioner, in the discharge of his duty, or who corruptly or by threats or force, or by any threatening letter or

communication, shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined not more than $1,000, or imprisoned not more than one year, or both." (Italics added.), 18 U.S.C. §285, 18 U.S.C. §286, 18 U.S.C. §287, 18 U.S.C. § 2071(a), 18 U.S.C. § 2071(b), 18 U.S.C. § 1512(k), 18 U.S.C. § 371, 18 U.S.C. § 242, 18 U.S.C. § 1519, 18 U.S.C. §666, 18 U.S.C. §641, Wire Fraud 18 U.S.C. §1343, 18 U.S.C. § 201, 18 U.S.C. §205, 18 U.S.C. §225, 18 U.S.C. §285, 18 U.S.C. §1506, 18 U.S.C. § 1512, 18 U.S.C. § 1515, 18 U.S.C. §1001, 18 U.S.C. §1002,  18 U.S.C. §1031, 18 U.S.C. §1341, 18 U.S.C. §1344, 18 U.S.C. §1346, 18 U.S.C. §1349, 18 U.S.C. §1510, 18 U.S.C. §1513, RICO: 18 U.S.C. §1961,  18 U.S.C. §1962, 18 U.S.C. §1963, 18 U.S.C. §1964, 18 U.S.C. §1965, 18 U.S.C. §1968.  The defendants' state child-support enforcement program at issue in the case, like that in every other State, is part of one of the largest cooperative federal-state programs, established under the Social Services Amendments of 1974 (1975 Act), Pub. L. No. 93-647, § 101(a), 88 Stat. 2351 (42 U.S.C. 651 et seq.) (adding Title IV-D to the Social Security Act). The program, which is administered by the Secretary of Health and Human Services (Secretary), provides that States with approved plans for child and spousal support that meet all federal requirements are reimbursed by the federal government for 66% of the costs of operating their child-support enforcement programs. 42 U.S.C. § 655(a)(2)(C). The United States has a substantial interest in the lawful, effective and equitable operation and administration of such child support program, and in the lawful administration of an Act of Congress.

20.     Pursuant to 18 U.S.C.  § 4, the United States judge has an implied substantial interest and duty in receiving information of the commission of felonies and referring the information to the United States Attorney General, an appropriate United States officer under Section 4.

**PRAYER**

WHEREFORE, Plaintiff prays that this Court enter an Order setting a hearing under Fed. R. Evid. 201(e) to hear the Plaintiff's submitted evidence attached to Exhibit I, Exhibit II, Exhibit III and Exhibit IV on August 31, 2024, at 9:00 AM.

**AFFIDAVIT**

I, MARY SEGUIN, do hereby certify that the statements and allegations set forth in the foregoing Motion is true and accurate to the best of my knowledge and belief.

Respectfully submitted,

May 21, 2024

> FOR PLAINTIFF
> MARY SEGUIN, Pro Se.
>
> By: _____ *Mary Seguin* _____
> Mary Seguin
> P.O. Box 22022
> Houston, TX 77019
> maryseguin22022@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 21, 2024, I filed the within Motion with the Clerk of the Court.

> Respectfully submitted,
>
> Mary Seguin
>
> Pro Se
>
> /s/ *Mary Seguin*
>
> Email: maryseguin22022@gmail.com
> Phone: (281)744-2616
> P.O. Box 22022
> Houston, TX 77019

EXHIBIT I.

## SPECIFICATION FOR OCSS CHANGE ORDER
### Auto Adjustment of Interstate Interest

This specification will outline the process by which interstate cases are selected, automatic adjustments are created, and support orders are modified all for the purpose of removing interest from interstate cases.

## FUNCTIONAL REQUIREMENTS

It is desirable for the Rhode Island Office of Child Support Services (OCSS) to prohibit the charging of interest on interstate cases. This is manually done by placing an N in the interest field on page 2 of the support order. Entry of the N not only prohibits the charging of future interest but automatically creates adjustments to zero out any existing interest.

There currently exists on the InRhodes system interstate cases for which the interest field is not an N and for which there is interest due. It is these cases that the system will process.

If on an interstate case, the interest field on the support order is blank, the system will automatically place an N in the interest field and create non-cash adjustments to zero out any existing interest. No support order modification or interest adjustments will be done on interstate cases without a support order or for which the interest field is already an N or is a Y, B or P.

Two reports will be created. The first will detail the interstate cases for which a support order modification was done and for which one or more interest adjustments were created. The second report will detail interstate cases for which the interest field is Y, B or P. A Y in the interest field is an order to accrue interest while B and P are orders to stay future interest but to keep any interest that has accrued to date.

EXHIBIT II.



EXHIBIT III.

Case Number: K20010521M
Filed in Providence/Bristol County Family Court
Submitted: 6/1/2023 10:13 PM
Envelope: 4132704
Reviewer: Maria O.

11:28:47 Tuesday, December 13, 2022

```
12/13/22   11:28        C A S E   T R A C K I N G      CSCL  ASMXA201
           TRAC.00           CASE HISTORY              U824  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
AGENT CONTACTED ME THAT NCP WANTS TO PAY ALL ARREARS TO OBTAIN PASSPORT. I____
CALLED CP PRIVATE ATTORNEY BARBARA GRADY TO ADVISE, AND TO DISCUSS IF CP_____
WANTS THE INTEREST PUT BACK ON THE CASE (██████████████████████████_____
███████████████████████). WE REMOVED THE INTEREST WHEN_____
CASE WAS MADE UI WHEN WE WERE FILING TO TEXAS. ATTY GRADY CHECKED WITH CP_____
AND CP IS STATISFIED WITH THE LUMP SUM PAYMENT OF PRINCIPLE OF $104K +/-.____
AFTER CONFERENCE WITH MONIQUE BONIN AND FRANK DIBIASE, IT WAS DECIDED TO_____
REQUIRE PAYMENT IN MORE SECURE/LESS REVERSABLE FORM THAN CREDIT CARD, SO $____
WILL NEED TO BE WIRED OR BY BANK CHECK. AGENT WILL BE CONTACTED BACK BYNCP____
ASNCP WON'T GIVE PHONE NUMBER OR EMAIL ADDRESS. AGENT IS NOT EVEN SURE IF_____
NCP IS IN COUNTRY. INTEREST IS NOT INCLUDED IN AMOUNT THAT IS CONSIDERED_____
FOR PASSPORT PURPOSES IN ANY EVENT._____

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____

RL: 80  12 22 ABSP:          SEGUIN      MARY        CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK   GERO    K   PNL:
```

Case Number: RI0810521M
Filed in Providence-Bristol County Family Court
Submitted 6/1/2023 10:13 PM
Envelope 4131704
Reviewer Mena O

11:20:56 Tuesday, December 13, 2022

```
12/13/22   11:20        C A S E   T R A C K I N G           CSCL  ASMXA201
                TRAC.00           CASE HISTORY               U024  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/06/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
BUSINESS OFFICE HAS PUT A FLAG ON DISBURSMENTS SO WE CAN GET THIS SORTED___
OUT. ADVISED AGENT THAT WHILE THERE IS NO BODY ATTACHMENT FOR NCP ISSUED___
FOR OCSS, THERE MAY BE A BODY ATTACHMENT THAT ISSUED PRIVATELY, SO WE DO___
NOT WANT TO TELL THE NCP ANY MORE THAN THAT. NCP CAN CHECK WITH THE COURT.__
ATTY GRADY SAID THAT SHE DOES NOT RECALL WHETHER OR NOT BA ISSUED PRIVATEL___
Y FOR NCP. ONCE WE ARE SATISFIED THAT PAYMENT HAS BEEN MADE AND THE FORM___
OF IT, WE CAN NOTIFY SYSTEMS TO RELEASE THE BLOCK ON PASSPORT._____

12/07/21 WENDY FOLERT (WAF2363) ENTERED COMMENT_____
PER ATTY KDT AT CP REQUEST REINSTATING INTEREST_____

12/07/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
REC'D CALL FROM ATTY GRADY THAT CP HAD RECONSISDERED AND WANTED INTEREST___
TO BE PUT BACK UP ON SYSTEM. EMAIL TO ACCOUNTING OFFICE TO PUT THE INTERES___

RL: 80  12 22 ABSP:           SEGUIN      MARY          CMD:_____
FNX: TRAC  D CLIENT:          MEYERSIER   GERO     K   PWL:
```

Case Number ...
Filed in Providers e/Harris County Family Court
Submitted 6/1/2023 10:13 PM
Envelope 41...04
Reviewer Maria O.

11:29:01 Tuesday, December 13, 2022

```
12/13/22    11:29        C A S E   T R A C K I N G       CSCL  A9MXA2G1
            TRAC.00              CASE HISTORY            V024  PROD
STARTING DATE   09 01 2021
SELECTION   COMPREHENSIVE CASE HISTORY

12/07/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT
REC'D CALL FROM ATTY GRADY THAT CP HAD RECONSIDERED AND WANTED INTEREST
TO BE PUT BACK UP ON SYSTEM. EMAIL TO ACCOUNTING OFFICE TO PUT THE INTEREST
T THAT WAS REMOVED IN 10/18 BACK UP ON SYSTEM AND TO RUN INTEREST FORWARD.

12/08/21 WENDY POBLAT (WAJ2363) ENTERED COMMENT
SUSPEND DISBURSEMENT FLAG WAS CHANGED FROM B TO SPACE
     FROM CASE DATA PANEL

12/08/21 KATHLEEN MCCUSKER (KOM4623) ENTERED COMMENT
SUSPEND PASSPORT OFFSET WAS CHANGED FROM (BLANK) TO Y
FROM CASE ID:
     FROM OPBT PANEL

12/08/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT

RL: 80  12 22 ABSP;         SEGUIN      MARY         CMD: _____
FMK: TRAC  D CLIENT:        MEYERSIEK   GERO    X    PWL:
```

Case Number: [illegible]
Filed in Providence/Bristol County Family Court
Submitted: 9/1/2023 10:13 PM
Envelope: 4132706
Reviewer: Maya C.

11:27:53 Tuesday, December 13, 2022

12/13/22 11:28 C A S E T R A C K I N G CSCL ASNKA201
TRAC.00 CASE HISTORY U824 PROD
**STARTING DATE** 09 01 2021
**SELECTION** COMPREHENSIVE CASE HISTORY

12/09/21 KEVIN TIGHE (KDT3550) ENTERED COMMENT
ACCOUNTING HAS CONFIRMED WITH TREASURY THAT THE $104,000 PAYMENT HAS BEEN RECEIVED AND THAT THAT ACCOUNT WILL NOT ALLOW THE MONEY TO BE REVERSED OUT OF THE ACCOUNT. BASED ON THAT INFORMATION, I ASKED SYSTEMS TO RELEASE THE PASSPORT BLOCK. ACCOUNTING HAS GIVEN ME THE BANK INFORMATION THAT CAME IN WITH THE WIRE TRANSFER. I AM REFERRING THIS TO T. FLYNN TO RESEARCH IF WE CAN MATCH ACCOUNT TO NCP AND TO LIEN IT IF POSSIBLE. ATTY GRADY, WHO REPRESENTS CP HAS ASKED THAT THE PAYMENT BE MADE BY CHECK RATHER THAN ON THE KIDSCARD. ACCOUNTING WILL DO THIS, BUT I TOLD ATTY THAT IT MAY TAKE A FEW DAYS TO EFFECTUATE. ATTY GRADY ALSO SENT EMAIL TODAY CONFIRMING THAT SHE REPRESENTS CP AND IS AUTHORIZED TO TAKE POSSESSION OF THE CHECK. CP IS BLIND SO COMING TO THE OFFICE TO PICK UP IS A HARDSHIP AND ACCOUNTING IS CONCERNED ABOUT MAILING THE CHECK.

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT

RL: 80 12 22 ABSP: SEGUIN MARY CMD: ______
FNX: TRAC D CLIENT: MEYERSIEK GERO R PNL:

Case Number K/0010524B
Filed in Providence/Bristol County Family Court
Submitted 6/1/2023 10 13 PM
Envelope 4132704
Reviewed Maria Johns

11:29:09 Tuesday, December 13, 2022

```
17/13/22   11:28        C A S E   T R A C K I N G        CSCL  ASXXA201
              TRAC.00              CASE HISTORY           U824  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT_____
CORRECT CP MEDCL ARREARS AS INTEREST OF $6028.75 WAS ADDED TO PRINCIPAL IN____
ERROR.  RELEASED $104185.98 WIRE TRANSFER RECEIVED 12/8/21 TO MOM FIP_____
PRINCIPAL $93214.56, CP MEDCL PRINCIPAL $8675.00 AND MEDICAID PRINCIPAL_____
$2296.42_____

12/09/21 18:32 ASPXEND (ASPXEND) DEACTIVATED THE CODE:_____
     TF61 (IN ARREARS - SEND OOS REQUEST FOR CONTEMPT ACTION)_____

12/09/21 SYSTEM CLOSED ENFORCEMENT EPISODE WITH FINAL STATUS_____
     58 COMPLETED - RECEIPTS/ADJUSTMENT ENDED DELINQCENCY_____

12/10/21 ADAM DIAS (ACD2457) ENTERED COMMENT_____
MADE ADJ TO CORRECT ACCIDENTAL ADJ THAT MADE CP MED NEGATIVE. IT IS SUPPOS____
ED TO BE $6028.75._____

RL: 80  12 22 ABSP:          SEGUIN      MARY         CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK   GERO    K    PNL:
```

ed in Providence/Bristol County Family Court
ubmitted 6/1/2023 10 13 PM
nvelope 4132704
eviewer Mana O

11:29:09 Tuesday, December 13, 2022

```
12/13/22   11:28        C A S E   T R A C K I N G        CBCL  ASMXA201
              TRAC.00           CASE HISTORY              U824  PROD
STARTING DATE    09 01 2021
SELECTION     COMPREHENSIVE CASE HISTORY

12/09/21 WENDY FOBERT (WAF2363) ENTERED COMMENT_____
CORRECT CP MEDCL ARREARS AS INTEREST OF $6028.75 WAS ADDED TO PRINCIPAL IN____
ERROR.  RELEASED $104185.98 WIRE TRANSFER RECEIVED 12/8/21 TO NON FIP_____
PRINCIPAL $93214.56, CP MEDCL PRINCIPAL $8675.00 AND MEDICAID PRINCIPAL_____
$2296.42_____

12/09/21 18:32 ASPXEND (ASPXEND) DEACTIVATED THE CODE:_____
     TF61 (IN ARREARS - SEND OOS REQUEST FOR CONTEMPT ACTION)_____

12/09/21 SYSTEM CLOSED ENFORCEMENT EPISODE WITH FINAL STATUS_____
     58 COMPLETED - RECEIPTS/ADJUSTMENT ENDED DELINQUENCY_____

12/10/21 ADAM DIAS (ACD2457) ENTERED COMMENT_____
MADE ADJ TO CORRECT ACCIDENTAL ADJ THAT MADE CP MED NEGATIVE. IT IS SUPPOS____
ED TO BE $6028.75._____

RL: 80  12 22 ABSP:              SEGUIN     MARY        CMD: _____
FNX: TRAC  D CLIENT:             MEYERSIEK  GERO   K    PNL:
```

Case Number K2001... ...
Filed in Providence/Bristol County Family Court
Submitted 6/1/2023 10 13 PM
Envelope 4132704
Reviewer Mana O

11:29:13 Tuesday, December 13, 2022

```
12/13/22   11:28          C A S E   T R A C K I N G          CSCL  ASMXA201
           TRAC.00               CASE HISTORY                U824  PROD
STARTING DATE   09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

12/14/21 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
MAILED ADMIN. SUBPOENA AND REQ. FOR INFO TO BANK OF AMERICA_____

12/14/21 KEVIN TIGHE (KDT5558) ENTERED COMMENT_____
CONTACTED CP'S ATTY TO ADVISE THAT CHECK IS READY TO BE PICKED UP AND TO_____
PLEASE LET ME KNOW WHEN SHE WILL COME BY SO I CAN ALERT THE GUARD AT THE_____
DOOR AND BRING THE CHECK DOWN TO HER._____

01/04/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
SPOKE WITH MARIE AT BANK OF AMERICA REGARDING A SUBPOENA THAT I HAD SENT_____
TO THEM REGARDING THE NCP. SHE WILL NOTIFY AN EMPLOYEE THERE TO DO MORE_____
RESEARCH_____

01/12/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
PER SI RECEIVED LETTER TODAY FROM BANK OF AMERICA STATING THAT THE NCP HAS____

RL: 80  12 22 ABSP:          SEGUIN       MARY        CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK    GERO    K   PNL:
```

Filed in Providence/Bristol County Family Court
Submitted 6/1/2023 10:13 PM
Envelope 4132704
Reviewer: Mana O

11:29:17 Tuesday, December 13, 2022

```
12/13/22   11:28        C A S E   T R A C K I N G        CSCL  ASHXA201
           TRAC.00           CASE HISTORY              U824  PROD
STARTING DATE    09 01 2021
SELECTION    COMPREHENSIVE CASE HISTORY

01/12/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
PER SI RECEIVED LETTER TODAY FROM BANK OF AMERICA STATING THAT THE NCP HAS_____
A CHECKING ACCOUNT WITH THEM. CREATED AN OFFLINE NOTICE OF INTENT TO LIEN_____
THE NCP'S ACCOUNT. FAXED AND MAILED COPIES TO BANK OF AMERICA TODAY. WILL_____
NOTICE NCP VIA MAIL AT THE TEN DAY MARK_____

02/21/22 TIMOTHY FLYNN (TWF3296) ENTERED COMMENT_____
MAILED AND FAXED OFFLINE PERFECTED NOTICE OF LIEN TO BANK OF AMERICA_____
REGARDING NCP.'S ACCOUNT. COPY MAILED TO NCP_____

03/04/22 SYSTEM (SYSTEM) ENTERED COMMENT_____
KWS1263 CREATED THE LIEN OF INSURANCE ASSETS FORM_____
ON 03/03/2022 FOR: PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE (PURE)_____
CLAIM NUMBER: TX027985_____

RL: 80  12 22 ABSP:          SEGUIN     MARY         CMD: _____
FNX: TRAC  D CLIENT:         MEYERSIEK  GERO    K    PNL:
```

EXHIBIT IV.



State of Rhode Island
# Office of Child Support Services
DEPARTMENT OF HUMAN SERVICES

**Menu**
- Case Information
  - Last 5 Payments
  - Last 13 Months
  - Current Orders/ Past Due Balances
  - Court Dates/ Appointments
  - Enforcement Actions
  - PIN Lookup

Case Manager

## Last 13 Months

Custodial Parent: Gero K Meyersiek          CSE ID

### Payment Made By The Non-Custodial Parent

| Period | Payment Made |
|--------|--------------|
| 12/2021 | $0.00 |
| 09/2018 | $4,441.95 |